of construction, and so long as it does not violate the constitutional rights of a citizen is a beneficent measure, and, in the interest of the safety of the public on the highways of the city, it is the duty of the legislative body to fulfill the original purpose of the passage of the ordinance in question by constructing legislation along constitutional lines that will accomplish the same object and fulfill the same purpose intended by the ordinance in question.

Therefore the trial and conviction below is without authority in law, and it is our unanimous judgment that the plaintiff in error was unlawfully convicted. Thus holding, the judgment of the lower court is reversed, and the defendant is discharged.

*Judgment reversed.*

Levine and Vickery, JJ., concur.

Thomas, a Taxpayer, *v.* Board of County Commrs. of Butler Co. et al.

State, ex rel. Seeman, *v.* Kinch et al.

(Decided April 2, 1923.)

*Mr. P. P. Boli, Messrs Andrews, Andrews & Rogers, Mr. M. O. Burns, Mr. W. C. Shepherd, Mr. Chester S. Durr,* and *Messrs. Squire, Sanders & Dempsey,* for appellants.

*Messrs. Bickley & Bickley,* and *Mr. B. F. Harwitz,* for appellees.

HAMILTON, J.  These two cases involve largely the same questions, and are considered together, as they were by the trial court.

The actions were taxpayers' suits, seeking to enjoin further proceedings in the construction of two sections of turnpike, one known as the Monroe road and the other as the Oxford-Millville road.

The proceedings with reference to these improve-

ments had reached the point of the making of the contracts, and bonds were being sold, or had been sold, and were in process of delivery, to pay for the improvements. Further proceedings were enjoined by the trial court, and from that judgment defendants appeal to this court.

Several objections are made to the proceedings by plaintiff, three of which we consider of sufficient importance for consideration:

First. The sufficiency of the preliminary resolution, declaring the improvement necessary, and the question whether unanimity in the vote of the commissioners, other than on the preliminary resolutions, is necessary.

Second. The failure to give notice of the passage of the resolution declaring the improvement necessary.

Third. Whether or not the failure of the auditor to file the certificate required by Section 5660, General Code, otherwise known as the Burns Law, is fatal to the proceedings.

These road improvements were initiated by the county commissioners without the presentation of a petition.

Section 6910 of the General Code authorizes such action upon the unanimous vote of the board.

Section 6911 provides that, when they have determined that any road shall be constructed, the board if acting without a petition, shall determine by resolution, by unanimous vote, the route and termini, the kind and extent of the improvement, and at the same time shall order the county surveyor to make surveys, etc.

It is admitted that none of the proceedings re-

ceived the unanimous vote of the commissioners except the preliminary resolution, and it is urged that the intent of the statute is that each step shall receive the unanimous approval of the commissioners.

We do not think it is necessary to add anything to the express terms of the statute. If the unanimous vote is required in every step in the transaction, the whole proposition in its finality might be defeated by one member of the board on a vote on the resolution apportioning the assessment, or on a vote on a payment to the contractor for the improvement. We see no reason for extending the unanimity beyond the express terms of the statute.

It is urged that the preliminary resolution which received the unanimous vote of the board did not comply with Sections 6910 and 6911, General Code, in that the resolution failed to define the route and termini and the kind and extent of the improvement.

While the resolution is somewhat indefinite, and probably should be more specific, if this was the only objection to the proceedings, the omission might well be overlooked, and the resolution sustained as a substantial compliance.

The first serious question with which we are confronted is the admitted failure to give the notice required by Section 6912, General Code.

Section 6912 provides:

"Upon the completion of the surveys, plans, profiles, cross-sections, estimates and specifications for such improvement by the county surveyor, he shall transmit to the commissioners copies of the same; and thereupon, except in cases of reconstruction or repair of roads, where no lands or property are taken, the county commissioners shall cause to

be published in a newspaper published and of general circulation within the county, * * * once a week for two consecutive weeks, a notice that such improvement is to be made and that copies of the surveys, plans, profiles, cross-sections, estimates, and specifications for said improvement are on file in the office of the county commissioners. for the inspection and examination of all persons interested therein. * * * Such notice shall also state the time and place for hearing objections to said improvement," etc.

As above stated, it is admitted that no such notice was given, and it is urged by counsel for defendants that no notice is required, as these improvements are within the exception, "except in cases of reconstruction or repair," etc.

The Monroe road involves the improvement of about three miles of road, at a cost of approximately $70,000, and provides for the surfacing of the road with "some permanent material," as provided in the determining resolution, and the contract is for asphalt.

The contract for the Oxford-Millville road was a much larger contract, and involves the improvement of the road with several inches of macadam, with an asphalt surface, and involves an expenditure of approximately $185,000.

The exception in Section 6912 cannot be construed to apply to contracts of such magnitude.

The contracts were not for repair of roads. To state the fact and magnitude of the improvement is to refute the proposition. Reconstruction mentioned in the statute is put in the same category with repair

of roads, and undoubtedly refers to an emergency restoration of a road following a casualty.

An attempt is made to give technical meaning to these two words. If we are to take the technical meaning, then the determining resolution itself eliminates the question of reconstruction from both contracts, as the resolution provides, among other things:

"That they do hereby declare that it is necessary to the public convenience and welfare that proceedings be had and taken for *constructing, improving* and *repairing* of the road described as follows."

If we are to resort to technical construction, then what the commissioners were bound to do under their determining resolution was either to construct, improve, or repair.

Section 6911, in mentioning the question of the determination of the board of commissioners, uses the words "constructed, reconstructed, improved or repaired," and requires unanimity in determining the improvement intended.

Reconstruction is not in the determining resolution.

We are constrained to give the words as used in Section 6912 the ordinary and reasonable construction in relation to the things to be accomplished. The section provides a purpose for the giving of the notice, and provides for the fixing of the time and place for hearing objections to said improvement. It certainly would be a strained construction to say that, in contracts involving more than $200,000, no notice was necessary, when in the construction of an improvement involving the amount of $500 or

$1,000, if construction or improvement is intended, a notice would be necessary.

The notice is for the purpose of giving the taxpayers an opportunity to make objections, or to protest, which might result in an alteration, postponement, or other relief; and also for the purpose of hearing claims for compensation for lands taken and for damages. The right of citizens to appear before a legislative body to protest and object to proposed legislation, and especially legislation involving questions of taxation, is reserved. Both the national and the state Constitutions provide this right. Under the express terms of this section, the citizen taxpayer is to be protected in the manner provided in the statute, and is entitled to notice.

The section will be construed, in so far as the exception is concerned, strictly in favor of the citizen taxpayers.

We are therefore of the opinion that the statute requires the giving of the notice in the letting of contracts such as here under consideration, and the failure to give the notice is fatal to the proceedings.

Moreover, we are of opinion that the admitted failure of the county auditor to file the certificate required by Section 5660, General Code, otherwise known as the Burns Law, is fatal.

Section 5660, General Code, provides that the commissioners of a county shall not enter into any contract, agreement or obligation involving the expenditure of money, or pass any resolution or order for the appropriation or expenditure of money, unless the auditor first certifies that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the

fund from which it is to be drawn, or has been levied and placed on the duplicate, and in process of collection and not appropriated for any other purpose; money to be derived from lawfully authorized bonds sold and in process of delivery shall, *for the purpose of this section,* be deemed in the treasury and in the appropriate fund.

We are at a loss to understand why this section needs construction, or why courts have held (and there have been such holdings) that such contracts are not within these statutes. Notable among such decisions is *Emmert* v. *City of Elyria,* 74 Ohio St., 185, 78 N. E., 269, where the court held, in construing the municipal section, which is a similar section, that the section had no application when the improvement was to be paid for from the sale of bonds.

In the opinion in *Emmert* v. *Elyria,* the court in the first part of the opinion finds that a court of equity ought not enjoin payment for work already completed; that, although a court might not enforce payment, it would not enjoin it.

It will be noted that the facts in that case were that the work had been fully completed, and that the taxpayers had stood by while the work was going on, without complaint. The court then, in the opinion by Judge Summers, proceeds to differentiate between money in the treasury and proceeds from the sale of bonds, and in a strained, unsatisfactory manner exempts the contract from the application of the Burns Law, in municipal contracts where the improvement is to be paid for by the sale of bonds. In a decision so difficult to understand, this court is constrained to hold the decision strictly to the statute construed (the construction of the municipal

code section), and we will not extend the decision to the construction of Section 5660, General Code, applicable to county, township, and school districts, although there may be some question of similarity in principle.

Many cases are cited holding the Burns Law mandatory in all cases with reference to cash in the treasury and taxes and money in the process of collection, and several cases are cited where the improvement was to be paid for from the sale of bonds.

In the case of *Comstock* v. *Village of Nelsonville,* 61 Ohio St., 288, 56 N. E., 15, the court held that the certificate was necessary with reference to the city's portion of the costs of such improvement.

The case of *Emmert* v. *Elyria, supra,* holds that, where the improvement is to be paid for by the proceeds of a bond issue, the certificate is not necessary.

In the case of *Village of Carthage* v. *Diekmeier,* 79 Ohio St., 323, 341, 87 N. E., 178, it was held that the certificate was necessary.

In the recent case of *Knowlton & Breinig* v. *Board of Education of Village of Johnstown,* 13 Ohio App., 30, 31 O. C. A., 177, the Court of Appeals of Licking county construed Sections 5660 and 5661, and held that, even in the case of a bond issue, the certificate was necessary, and sought to distinguish the case from the case of *Emmert* v. *Elyria, supra,* but in effect declined to follow that decision. A motion was made for an order directing the Court of Appeals to certify its record in the *Knowlton case,* and that motion was overruled by the Supreme Court, June 22, 1920.

Moreover, the case of *Village of Carthage* v. *Diekmeier, supra,* in effect overrules the holding in the

case of *Emmert* v. *Elyria*. In both cases, bonds were sold to pay for the improvement.

In the *Emmert case* the court held that the clerk's certificate was not necessary.

In the case of *Village of Carthage* v. *Diekmeier,* the clerk's certificate specified that a certain sum was in the fund. When the work contracted for was finished, it was found the amount exceeded the sum certified to by the clerk. The Supreme Court in the decision limited the recovery against the city to the amount named in the certificate of the clerk, and held there was no liability beyond the amount certified. We emphasize that this improvement was paid for from a bond issue, and is an authority for the proposition that the auditor's certificate was necessary to the validity of the contracts in the cases at bar.

The case of *Emmert* v. *Elyria* was decided May 1, 1906. The case of *Village of Carthage* v. *Diekmeier* was decided February 2, 1909.

In the *Diekmeier case,* the court said (page 345 [87 N. E., 184]):

"No longer can it be said that the contractor need not look to the legal phases of his negotiations with a municipal corporation. He must be active in protecting himself."

And the court cited the cases of *McCloud & Geigle* v *City of Columbus,* 54 Ohio St., 439, 44 N., E., 95, and *Lancaster* v. *Miller,* 58 Ohio St., 558, 51 N. E., 52. In the latter case the court says that the terms of a statute, regulating the execution of a contract whereby public money will be expended, must be followed. And further says at page 575 (51 N. E., 55):

"Contracts made in violation of these statutes should be held to impose no corporate liability.

Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.''

In the case of *Comstock* v. *Village of Nelsonville, supra,* the third section of the syllabus reads:

''Whether the certificate required by said Section 2702 [Revised Statutes] has been filed and recorded or not, must be ascertained by each contractor for himself at his peril. In the absence of such certificate, when required, no liability arises against the municipality, even though the contractor has fully performed his contract.''

In the *Diekmeier case,* as above stated, the improvement was to be paid for by a bond issue, and the Supreme Court found that a certificate was necessary to justify a payment beyond the amount certified to by the clerk. This would seem to be sufficient authority on which to ground the decision in the instant case.

We are therefore of the opinion that there is no binding authority requiring us to construe Sections 5660 and 5661 as not applying to contracts where improvements are to be paid for by an issue of bonds.

The reading of the statute is clear. Why, as above stated, it should be necessary to construe it, we are unable to see. It says:

''Commissioners * * * shall not enter into any contract, agreement or obligation involving the expenditure of money, * * * unless the auditor * * * first certifies,'' etc.

The section further provides that money to be derived from lawfully authorized bonds sold, and in

process of delivery, for the purpose of this section, shall be deemed in the treasury and in the appropriate fund.

What is meant when the statute says "for the purpose of this section" and "that the auditor shall file a certificate"?

If lawfully authorized bonds have been sold and are in process of delivery, the auditor is then authorized to make the certificate that the money is in the treasury and unappropriated, etc. This is the plain reading of the statute, and, if this is not done, Section 5661 provides that all such contracts or resolutions are void.

Why the law should have been made the football of judicial decisions we are unable to understand. There are many good reasons to be advanced in favor of the law. That it sometimes works a hardship due to negligence of contractors in not observing the requirements is beside the question. The law is on the statute books, placed there by the Legislature. This court is unalterably opposed to judicial legislation. If the law is not to be enforced, it should be repealed by the Legislature. There are many reasons why it should apply even in the case of a bond issue. If the law is not to apply in case of a bond issue, let the Legislature say so by way of an exception. Neither has the law reached the stage of innocuous desuetude, but it breathes vitality, and the duty of the courts is to see that the requirements are strictly followed in its clearly expressed terms.

It has been suggested in the briefs of counsel that the clerk of the board of commissioners had filed a certificate, and that the auditor had filed some writ-

ing in reference to the bonds having been sold, but this does not meet the requirements of the statute.

While no particular form of certificate is required, it is necessary that it contain the matter required by the statutes. But the record here does not show such to be the case. On the other hand, it is admitted that no certificate, if required by Section 5660, was filed by the auditor.

A copy of a late decision of the Supreme Court in the case of *City of Portsmouth* v. *Nicola Bldg. Co.,* 106 Ohio St., 550, 140 N. E., 174, has been handed to us as an authority in the instant case. But the facts in that case are entirely different. It involves the question of some extras growing out of a contract where it is admitted that the certificate had been filed, and it is only a question of the payment for some extra work, the exigency of which had been provided for in the original contract. The case has no application to the cases at bar.

The conclusion is that the proceedings are fatally defective in the failure to give the notice required by Section 6912, General Code, and in the failure of the auditor to file the certificate under Section 5660, General Code. For these reasons, the injunction will be allowed as prayed for.

*Injunction allowed.*

CUSHING and BUCHWALTER, JJ., concur.