**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2789

CHAD PARKER; REBECCA KENWICK-PARKER; MARK REDMAN;
DONNA REDMAN,
Appellants

v.

GOVERNOR OF PENNSYLVANIA; ATTORNEY GENERAL OF PENNSYLVANIA;
SECRETARY OF THE PENNSYLVANIA DEPARTMENT OF HEALTH
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 1-20-cv-01601)
U.S. District Judge: Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
On June 9, 2023

Before: HARDMIAN, AMBRO, and FUENTES, *Circuit Judges*

(Filed:  September 8, 2023)

_____

**OPINION**[*]

_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

FUENTES, *Circuit Judge*.

Four Pennsylvania residents challenge the Commonwealth's implementation of emergency public health measures to combat the COVID-19 pandemic. The District Court deemed their claims nonjusticiable and dismissed them for lack of subject matter jurisdiction. We agree and will affirm.

## I. Background

Beginning in March 2020, the Pennsylvania Department of Health (DOH) began to trace exposures to COVID-19 and impose quarantines on exposed individuals. According to its contract-tracing protocol, the DOH first contacts patients who tested positive for COVID-19 and asks for a list of "close contacts" they had while infectious.[1] Next, DOH sends each contact a letter directing the recipient to self-quarantine for 14 days.[2] The letter warns that if the recipient fails to quarantine voluntarily, then DOH may petition a court to impose an involuntary quarantine.[3] The DOH followed this protocol when Plaintiff Chad Parker tested positive for COVID-19 in July 2020: Parker was contacted, asked about his recent contacts, and directed to self-quarantine.

---

[1] *Parker v. Wolf*, 506 F. Supp. 3d 271, 274 (M.D. Pa. 2020), *aff'd*, 2021 WL 5492803 (3d Cir. Nov. 23, 2021). The District Court made factual findings in connection with Plaintiffs' prior motion for a preliminary injunction. Plaintiffs do not dispute the Court's description of the contact-tracing protocol, which accords with their own allegations in the Amended Complaint.

[2] *Parker*, 506 F. Supp. 3d at 274–75.

[3] *Id*. Despite this warning, Pennsylvania never petitioned for an involuntary quarantine during the pandemic. *Id*. at 275.

From July 2020 to June 2021, the DOH also required most individuals to wear face coverings when in public. In March 2021, the DOH amended this order to exempt individuals fully vaccinated against COVID-19 from masking in non-healthcare settings. The DOH lifted its statewide mask mandate effective June 28, 2021 and has not reimposed it.

Plaintiffs Chad Parker, Rebecca Kenwick-Parker, Mark Redman, and Donna Redman filed this suit in September 2020 to declare the DOH's contact tracing and masking regulations unconstitutional and enjoin their operation. The District Court denied Plaintiffs' motion for a preliminary injunction because it determined Plaintiffs' claims were not justiciable.[4] We affirmed on interlocutory appeal, reasoning that (1) Plaintiffs lacked Article III standing to enjoin the contact-tracing protocol; and (2) the DOH's withdrawal of the mask mandate rendered Plaintiffs' claims against it moot.[5]

During the pendency of *Parker I*, Plaintiffs amended their complaint to add several allegations not considered by the prior panel. Among other things, Plaintiffs now (1) allege that P.G., a minor child of Plaintiffs Mark and Donna Redman, experienced contact tracing in April 2021; (2) assert that the DOH's "contact tracing database was subject to a serious data breach, thereby compromising the confidential, private, and sensitive information of

---

[4] *Parker*, 506 F. Supp. 3d at 292.

[5] *Parker v. Governor of Pa.*, No. 20-3518, 2021 WL 5492803, at *2–4 (3d Cir. Nov. 23, 2021) ("*Parker I*").

countless numbers of Pennsylvanians;"[6] and (3) separately challenge the March 2021 amendment to the mask mandate, which exempted vaccinated individuals.

The District Court dismissed the Amended Complaint after concluding that our opinion in *Parker I* foreclosed subject matter jurisdiction over Plaintiffs' claims. Plaintiffs again appeal.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal for lack of subject matter jurisdiction *de novo*.[7]

## III. Analysis

Plaintiffs argue that the District Court erred by dismissing this case because newly added factual allegations and other developments since *Parker I* render their claims justiciable. We disagree that Plaintiffs have established a live controversy and will affirm the District Court.

### A.     Article III Standing

We first examine Plaintiffs' renewed attempt to establish an ongoing or imminent injury arising from the DOH's contact-tracing protocol. To establish standing to sue, Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

---

[6] App. 65 ¶ 150.

[7] *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

favorable judicial decision."[8]  Plaintiffs seek only prospective relief, and so they must show an ongoing or "certainly impending" future injury to pursue their claims.[9]

In *Parker I*, we held that Plaintiffs lacked an ongoing or imminent injury arising from contact tracing.[10]  Plaintiffs alleged two relevant injuries at the time: (1) the future threat of being subjected to the program and (2) voluntary changes they have made to their behavior to avoid contact tracing.[11]  We explained that while Chad Parker previously encountered contact tracing, this "[p]ast exposure to conduct" did not render a future injury imminent.[12]  We also credited the District Court's thorough factual analysis of the contact-tracing procedure, which concluded that the risk of future exposure depends on an "attenuated chain of events" initiated by third parties.[13]  The necessary "guesswork as to how independent decisionmakers will exercise their judgment" precluded a finding of imminent injury.[14]  And we rejected Plaintiffs' alleged change in behavior as a valid injury, as parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."[15]

---

[8] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[9] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

[10] *Parker I*, 2021 WL 5492803, at *2–3.

[11] *Id.* at *2.

[12] *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

[13] *Id.* at *3.

[14] *Id.* (quoting *Clapper*, 568 U.S. at 413).

[15] *Id.* (quoting *Clapper*, 568 U.S. at 416).

Plaintiffs do not ask us to depart from our reasoning in *Parker I*, but they allege two new harms arising from contact tracing that the prior panel did not consider.[16] They first attempt to repackage their behavioral argument by asserting a "chilling effect" on their freedom to associate.[17] But just as a plaintiff cannot manufacture harm through voluntary changes in behavior, a subjective "chilling injury" does not support Article III standing to challenge a state regulation absent "evidence that the government action has a present and concrete effect."[18] As Plaintiffs cannot show an imminent or ongoing exposure to the contact-tracing protocol, they cannot allege a present and concrete effect.

Next, Plaintiffs assert a new injury stemming from the DOH's ongoing storage of confidential information in a contact-tracing database, which allegedly experienced a "serious data breach" of an uncertain nature.[19] We have held, however, that a plaintiff

---

[16] Plaintiffs do argue that *Parker I* is not binding because it was a nonprecedential decision issued on a motion for a preliminary injunction. True enough, "findings of fact and conclusions of law made in conjunction with [a] preliminary injunction are indeed preliminary" and "do not foreclose any findings or conclusions to the contrary based on the record as developed at final hearing." *New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 519 (3d Cir. 1995). Yet the jurisdictional law applied at the preliminary injunction stage is the same law we must now apply here. The discretionary "law of the case" doctrine counsels against revisiting legal issues decided in *Parker I* absent (1) new evidence; (2) supervening law; or (3) clear error in the prior ruling that creates manifest injustice. *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116–17 (3d Cir. 1997).

Plaintiffs do not argue that clear error or supervening law requires us to reconsider *Parker I*, and so we limit our analysis to newly raised facts and legal issues the prior panel did not consider.

[17] Appellants' Br. at 45.

[18] *Salvation Army v. Dep't of Cmty. Affs. of State of N.J.*, 919 F.2d 183, 193 (3d Cir. 1990).

[19] App. 65 ¶ 150.

cannot establish an ongoing or imminent injury simply through allegations that "an unknown hacker . . . potentially gained access to sensitive information" in a large data breach.[20] Plaintiffs have not otherwise identified a concrete harm stemming from the DOH's storage of information, and so they cannot rely on the alleged breach in security to show an Article III injury.[21] They therefore lack standing to enjoin the DOH's contact-tracing protocol.[22]

## B.    Mootness

We last address Plaintiffs' contention that their claims against the DOH's defunct mask mandate remain live. A claim ordinarily becomes moot when events after the complaint's filing make it impossible for the court to grant effective relief,[23] but there are two narrow exceptions to this rule. First, the voluntary cessation of conduct does not render a case moot if the alleged wrongdoer "could reasonably be expected to engage in the

---

[20] *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022) (emphasis removed) (citing *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42–43 (3d Cir. 2011)).

[21] *See Clemens*, 48 F.4th at 152–56.

[22] Plaintiffs' Amended Complaint also newly alleges that in April 2021 a school official instructed the Redmans' son, P.G., to quarantine at home because he was exposed to COVID-19 at school. App. 60–61 ¶¶ 133–35. The DOH then made several attempts to contact the Redmans, but Plaintiffs do not allege that the Redmans ever responded to these inquiries or faced any further consequences as a result. App. 61–62 ¶¶ 136–40.

Plaintiffs have not raised, and have therefore waived, any argument that their allegations about P.G. further their claim of future harm. In any case, the experience of P.G.—a nonparty to this litigation—does not render *future* harm to *Plaintiffs* any less speculative. *See Parker I,* 2021 WL 5492803, at *2 (citing *City of Los Angeles*, 461 U.S. 95 at 102).

[23] *Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021).

challenged behavior again."[24] Second, an otherwise moot claim may proceed in "exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[25] "There must be more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability."[26]

In *Parker I*, we held that the DOH's decision to lift the mask mandate in June 2021 rendered Plaintiffs' challenges to it moot.[27] We concluded that neither exception to the mootness doctrine applied because the mandate "expired based on the availability of vaccines" and Plaintiffs failed to show there was a "reasonable expectation that a statewide mask order will be reinstated."[28] One development since *Parker I* merits brief discussion, but it does not disturb our prior and present conclusion that Plaintiffs do not show a statewide mask mandate is expected to recur.

Effective September 7, 2021, the DOH issued a mask mandate for school children. Plaintiffs argue that the DOH's continued willingness to require masking, albeit on a smaller scale, supports their argument that a statewide mask mandate is reasonably likely to recur and renders their claims justiciable. But Plaintiffs are incorrect for a simple reason:

---

[24] *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020).

[25] *Cnty. of Butler*, 8 F.4th at 231 (citations omitted).

[26] *Id.* (citation omitted).

[27] *Parker I*, 2021 WL 5492803, at *4.

[28] *Id.*

the Pennsylvania Supreme Court subsequently held that the school mask mandate exceeded DOH's statutory authority and struck it down.[29]  So, far from supporting jurisdiction, this development in state law makes a resurrection of a statewide mask mandate even less likely.   Plaintiffs' challenge to the mask mandate therefore remains moot and nonjusticiable.[30]

## IV. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

---

[29] *See Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452 (Pa. 2021). Pennsylvania voters amended the state constitution on May 18, 2021 to give the legislature unilateral power to terminate the Governor's emergency declaration by a simple majority; the legislature did precisely that on June 10, 2021. *Id.* at 457–58.  The Pennsylvania Supreme Court then held that, absent an emergency declaration, DOH lacked the legal authority to issue a mask mandate. *Id.* at 486–87.  The Governor has not redeclared an emergency related to COVID-19.

[30] Insofar as Plaintiffs separately challenge the DOH's March 2021 amendment to the mask mandate, which necessarily expired along with the mandate itself, their claims are moot for the same reasons.